# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BENJAMIN THOMAS, | ) |
| PLAINTIFF, | ) |
| VS. | )      2:06-cv-4878-JHH |
| CVS/PHARMACY, | ) |
| DEFENDANT. | ) |

## MEMORANDUM OF DECISION

The court has before it the November 28, 2007 motion (doc. # 12) of defendant CVS/Pharmacy (hereinafter "CVS") for summary judgment.  Pursuant to the court's November 30, 2007 order (doc. # 19), the motion was deemed submitted, without oral argument, on December 28, 2007.

## I.    Procedural History

Plaintiff Benjamin Thomas commenced this action on October 26, 2006 by filing a complaint in the circuit court of Jefferson County, Alabama against his former employer CVS,[1] alleging violations of 42 U.S.C. § 1981, the Alabama Age Discrimination in Employment Act of 1997 ("AADEA"), and negligent hiring,

---

[1] As of April 10, 2007, when Thomas was deposed in this case, he was working as an Assistant Manager at Advance Auto Parts in Fairfield.  (Thomas Dep. at 23-24.)

training, supervision, and retention.  More specifically, plaintiff's contentions were that defendant's conduct amounted to: (1) race discrimination and retaliation under § 1981; (2) age discrimination, harassment, and retaliation under the AADEA; and (3) failure to protect plaintiff from the alleged discrimination, harassment and retaliation by negligently hiring, training, and supervising plaintiff's supervisor.

The case was properly removed (doc. # 1) to this court on December 15, 2006. On November 28, 2007, CVS filed a motion (doc. # 12) for summary judgment asserting that plaintiff's claims fail as a matter of law.  Both parties have filed briefs and submitted evidence in support of their respective positions.  Defendant submitted a memorandum of law (doc. # 13) and evidence[2] (docs. # 14-18) in support of its own motion for summary judgment on November 28, 2007.  On December 21, 2007, plaintiff filed a brief (doc. # 25) and evidence[3] (docs. # 22-24) in opposition to

---

[2] The defendant submitted the following evidence: the deposition of Benjamin Thomas with selected exhibits; the deposition of Amanda Dodson; the deposition of Robert Evans; the deposition of Richard Howard; the deposition of Richard Hughes with selected exhibits; the deposition of Donald Long; the deposition of Ray Miller; the deposition of Rodney Perkins; the affidavit of Richard Hughes, with exhibits; the affidavit of Darren Twedell; and the January 10, 2006 letter from the EEOC providing CVS notice of the amended charge.

[3] The plaintiff submitted the following evidence: the affidavit of Benjamin Thomas with exhibit; defendant's exhibit 18 to plaintiff's deposition – Employee Information Sheet on Benjamin Thomas; plaintiff's deposition exhibit 3 – CVS EEOC Statement of Position Letter for Amended Complaint; plaintiff's deposition exhibit 4 – CVS EEOC Statement of Position Letter for Original Complaint; plaintiff's deposition exhibit 26 – Employee Compensation Worksheet for Benjamin Thomas; plaintiff's deposition exhibit 32 – Employee Information for Amanda Dodson; plaintiff's deposition exhibit 59 – Hughes' Interview Notes of Paul Mims; plaintiff's deposition exhibit 61 – Personnel File of Michele Robinson; plaintiff's deposition exhibit 62 –

defendant's motion for summary judgment.  On December 28, 2007, defendant filed a brief (doc. # 27) in reply to plaintiff's opposition.

Also ruled upon herein are Plaintiff's Motion to Strike the Affidavit of Darren Twedell (doc. # 20), Defendant's Motion to Strike Portions of Benjamin Thomas Affidavit (doc. # 26), and Defendant's Motion to Strike Plaintiff's Exhibit (doc. # 34) and Witness (doc. # 35) Lists.

## II.    Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transp., 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  See id. at 323.  Once the moving party has met its

---

Employee Compensation Change Form for Amanda Chhetri; plaintiff's deposition exhibit 63 – Employee Job Information and Compensation Change Form for Amanda Chhetri; plaintiff's deposition exhibit 67 – Employee Job Information and Compensation Change Form for Jonathan Diamond; plaintiff's deposition exhibit 68 – Store Manager and Assistant Store Manager Ratings for 2003-2006; Individual Employee SMD Transcript, Bates Nos. 8893-8901; and Composite Exhibit of Comparator Information.

burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324.

The substantive law will identify which facts are material and which are irrelevant. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. See Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. See id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Prop., 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not

4

controverted at trial.  See Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  See Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand

5

a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  See Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## III.   Relevant Undisputed Facts[4]

### A.    Organizational Structure of CVS

CVS is a retail drug store chain with approximately 6,200 stores operating in 43 states.  (See Doc. # 13 at 3.)  CVS operates many of those stores throughout Alabama, including the store locations of Five Points, Tuscaloosa/Lomb, Pelham, Bluff Park, Selma, and Columbiana.  (Thomas Dep. at 43-46.)

The organizational structure of CVS includes the positions of Assistant Store Manager, Store Manager, and District Sales Manager.  (See Doc. # 13 at 3.)  Store managers are responsible for the total operation of their stores, including managing, supervising and training store employees. (Hughes Aff. ¶ 2.) CVS has a three-phase Store Manager Development Program, the completion of which may lead to an

---

[4] If the facts are in dispute, they are stated in a manner most favorable to the plaintiff.  See Fitzpatrick, 2 F.3d at 1115.

employee's qualification to become a store manager.  (Hughes Aff. ¶ 2.)  However,

simply because a person has completed or become certified in all three phases of the

Store Manager Development Program does not mean he is qualified to be a store

manager.  (Hughes Aff. ¶ 2.)

Store Managers report to District Sales Managers.  (Hughes Aff. ¶ 2.)  Alabama

District Sales Managers are assigned areas encompassing approximately 20 stores and

are responsible for the stores within their assigned district.  (Hughes Aff. ¶ 2.)  The

responsibilities of District Sales Managers include hiring and promoting Assistant

Store Managers and Store Managers within their district.  (Hughes Aff. ¶ 2.)

CVS has a workplace anti-discrimination and anti-harassment policy that

prohibits all forms of discrimination and harassment, including that based on race,

age, and retaliation.  (Exh. A to Hughes Aff.)  A copy of "Your Guide to CVS" is

issued to all CVS employees, and was so issued to Thomas, who acknowledged his

receipt thereof on April 24, 2002.  (Def.'s Exh. 15 to Thomas Dep.)  Employees who

experience workplace discrimination or harassment are instructed to report it to their

supervisor.  (Hughes Aff. ¶ 4.)  When the improper conduct is alleged on the part of

a supervisor, employees are instructed to report it to the Human Resource Manager.

(Hughes Aff. ¶ 4.)  CVS also employs a toll-free Ethics Line for employees to

communicate ethically inappropriate or illegal conduct.  (Hughes Aff. ¶ 4.)  Store

managers inform employees of the discrimination policies and the policies are posted in the employee break room. (Hughes Aff. ¶ 4.)  In addition, CVS has a Code of Conduct which prohibits discriminatory activities and provides instructions on how to report discrimination, harassment, or other misconduct.  (See CVS Code of Conduct.)

**B.    Thomas's Employment with CVS**

Thomas first became employed with CVS as a Clerk/Cashier at the Clairmont location on June 1, 1998.  (Thomas Dep. at 36.)  Approximately a year and a half later, Thomas was promoted to the position of Shift Supervisor.  (Thomas Dep. at 37.)  Then, in April 2003, Thomas was moved to the Tuscaloosa/Lomb location and promoted to Assistant Store Manager by District Manager Tom McCann.  (Thomas Dep. at 38-39.)  In July 2004, Richard Hughes replaced McCann as District Manager and reviewed Thomas's performance.  (Hughes Aff. ¶ 9.)  Hughes categorized Thomas's performance as "needs improvement."  (Hughes Aff. ¶ 9.)

In January 2005, Hughes, who continued to be concerned about Thomas's performance, sat down with Thomas and asked "what his goals and aspirations were [and] asked him did he want to move up [in the company]."  (Hughes Dep. at 111-12.)  Thomas then indicated to Hughes that he would like to become a store manager.  (Hughes Dep. at 196.)  To facilitate such a promotion, Hughes realized that he needed

8

to get Thomas positioned to become a store manager, and moved him to the Green Springs location. (Hughes Dep. at 112.) Thomas was in favor of the transfer, hoping that it would improve his chances to become a store manager and wanting to get out of the "rough environment" of West End. (Thomas Dep. at 47-48.)

Brian Fricks was the Store Manager at the Green Springs location where Thomas was transferred. (Hughes Dep. at 102.) When Fricks reviewed Thomas's performance for March 2005, he noted his belief that Thomas was not ready to run a store. (Hughes Dep. at 102.) But in June 2005 Rodney Perkins became the Store Manager at Green Springs and recommended to Hughes that Thomas be promoted to a store manager position.[5] (Hughes Dep. at 104; Perkins Dep. at 20.) So, in July 2005 Hughes recommended that Thomas serve as Interim Store Manager at the Leeds location after Donald Long, the District Sales Manager of that store, informed Hughes that he needed an Interim Store Manager while searching for a permanent one. (Hughes Dep. at 157-60.) Hughes recommended Thomas because he "felt like it was a good opportunity to run a store as an interim manager. He would be fully in charge of that location, so I thought it was a great opportunity just to see what his skill sets

---

[5] In his deposition, Perkins testified that he made the promotion recommendation in July 2004. (Perkins Dep. at 20.) Perkins seems to have mis-spoken, as Thomas testified in his deposition that he only first moved to the Green Springs location in 2005. (Thomas Dep. at 45-46.)

were." (Hughes Dep. at 157-58.) Along those same lines Hughes told Long "Look, I've got this guy that's interested in moving up, I'd like to just kind of see where he's at and would you mind trying to put him up there and just see how he does?" (Hughes Dep. at 158.)

Thomas was reluctant to take the position as Interim Store Manager because he wanted to run his own store and did not view the interim position as a step forward in his career. (Thomas Dep. at 50-51.) But he did manage the Leeds store for approximately two months and found it to be a positive experience. (Thomas Dep. at 52.) At the end of that time period, Hughes told Long that he could keep Thomas permanently as the store manager at Leeds, but Long declined that offer, instead choosing Heath McAlister for the position. (Hughes Dep. at 159-60.) Long decided that Thomas did not have the leadership skill set to be a store manager, but that he might be able to manager a low volume store if it also had a strong support staff.[6] (Long Dep. at 64, 177-78.) Thus, Thomas returned to the Assistant Store Manager position at the Green Springs location.

In April 2006, at the age of 43, Thomas was promoted to the Store Manager position at the Clay/Chalkville location *after* he was rated as "meets expectations" by

---

[6] Long did tell Thomas that he was doing a good job at the Leeds store. (Thomas Dep. at 53-54.)

Hughes in March 2006.  (Thomas Dep. at 56.)  Although acting District Manager Robert Evans offered Thomas that promotion, Hughes had made the recommendation.[7]  (Thomas Dep. at 56-57.)  Approximately four months later, Thomas was transitioned as Store Manager to the higher volume Trussville store. (Thomas Dep. at 57-58.)  Thomas considered the transition to be a better opportunity, despite the fact that the condition of the store would make the position "a great challenge."  (Thomas Dep. at 58.)

## C.  The Disputed Promotion Decisions

Thomas believes that he was discriminatorily passed over by Richard Hughes, a white male District Sales Manager born on August 2, 1965, for nine separate promotions to store manager positions in 2005.[8]  (See generally Compl.; see also

_____

[7] In April 2006, Hughes was mentoring Interim District Manager Robert Evans.  Evans was looking for a store manager for the Chalkville location, and did not believe he had anyone in his own district ready to be promoted.  Hughes asked Evans to consider promoting Thomas. (Hughes Dep. at 204-05; Evans Dep. at 53-54.)

[8] CVS provided Hughes with extensive training in diversity and discrimination, including courses entitled Workplace Harassment and Managing Across Difference.  (Hughes Aff. ¶ 6.)  As part of its evidentiary submission, CVS filed the affidavit of Darren Twedell which sets forth that as Regional Sales Manager, Twedell has never been made aware of any complaints "to the effect that Richard Hughes has a bias against any employee because they were over the age of 40 or because of their race."  (Twedell Aff. ¶¶ 5, 6.)  Plaintiff filed a motion (doc. # 20) to strike that affidavit, on the grounds that Twedell was not disclosed during Rule 26 disclosures or otherwise during the course of discovery.  CVS counters (doc. # 21) that Twedell was disclosed during various depositions and through a document production on August 1, 2007.  (See Doc. # 21 at 2-3.)  The court finds the motion (doc. # 20) to strike **MOOT**.  The contested affidavit is not relied upon in any way by the court in reaching its decisions herein.

11

Hughes Aff. ¶ 1.)

       1.    The Five Points West Position

On January 23, 2005, Hughes promoted Justin Carr, a 27 year old white male, to a store manager position at the CVS Five Points West location. (Hughes Aff. ¶ 10; Hughes Dep. at 79-80; Pl.'s Exh. 51 to Hughes Dep.)  Hughes decided to promote Carr to that position because he had performed well as an Assistant Store Manager for the six to seven months he had been in that position, had previous management experience with another company,[9] and was highly recommended by his Store Manager, Ron Kubina. (Hughes Aff. ¶ 10; Pl.'s Exh. 51 to Hughes Dep.) In addition, Carr had demonstrated to Hughes that he had great communication, leadership, and merchandising skills.  (Hughes Aff. ¶ 10.)  In contrast, Hughes had spoken with Thomas's former Store Manager at the Lomb location and learned that Thomas's strongest asset was his ability to "put up" the truck.  (Hughes Aff. ¶ 10.)  Given that and the fact that Thomas had not demonstrated to Hughes that he could effectively communicate, Hughes was "concerned about promoting Thomas when he had recently received a 'needs-improvement' rating."[10]  (Hughes Aff. ¶ 10.)

---

[9] Before being hired as an Assistant Store Manager for CVS, Carr had close to 10 years of management experience, including three years of hiring, training, and scheduling employees for work.  (Hughes Aff. ¶ 10.)

[10] Carr had not received a "needs improvement" rating for his performance at the time he was promoted to Store Manager.  (Hughes Aff. ¶ 10.)

12

      2.     The Tuscaloosa/Lomb Position

On May 1, 2005, Hughes promoted white male Charles Bennie McGraw, then an Assistant Store Manager for about a year, to a store manager position at the Tuscaloosa/Lomb location.  (Hughes Aff. ¶ 11.)  Hughes promoted McGraw to that position because "he was a versatile employee, demonstrating a willingness to transfer to any location he was needed."  (Hughes Aff. ¶ 11.)  In addition, McGraw had demonstrated to Hughes that he was a good merchandiser and good communicator and had also expressed his ambition by asking Hughes on several occasions for the opportunity to manage a store.  (Hughes Aff. ¶ 11.)

      3.     The Pelham Position

On June 5, 2005, Hughes promoted Heath McAlister, a 26 year old white male, to a store manager position at the Pelham location.  (Hughes Aff. ¶ 12; Exh. L to Hughes Aff.)  At that time, McAlister had not yet completed the Store Manager Development Program and had only been employed by CVS for about two months. As a result he had not yet received any performance review.  (Hughes Dep. at 96-97, 100-101.)  Nonetheless, Hughes decided to promote McAlister because McAlister had a background in management, great communication skills, and demonstrated initiative and ambition.  (Hughes Aff. ¶ 12.)  McAlister had at least eight years of management experience prior to his employment with CVS, and had performed

management functions such as payroll and scheduling and had managed a crew of 5 to 7 members.  (Hughes Aff. ¶ 12; Hughes Dep. at 102.)  In contrast, Hughes says that the skills he saw in McAlister were not skills he had seen in Thomas.  (Hughes Aff. ¶ 12.)  Thomas had received a "needs improvement" rating on his most recent performance review.   (Hughes Dep. at 102.)   Moreover, Thomas was not recommended for the Pelham store position by his former manager, Norman Mowery – in fact, Mowery told Hughes that Thomas's strength as Assistant Manager was putting out or unloading the truck.  (Hughes Aff. ¶ 12.)

    4.    The Bluff Park Position

    On June 5, 2005, Hughes promoted white female Kimberly Clay to the store manager position at the Bluff Park location.  (Hughes Aff. ¶ 13; Hughes Dep. at 119.) At the time of her promotion, Clay had been with CVS for approximately two years. (Hughes Dep. at 77; Exh. M to Hughes Aff.)  Hughes decided to promote Clay to that position because both Store Managers that Clay had worked under said that she was ready to run a store; in fact, prior to her employment with CVS, Clay had served as a Human Resource Manager with Toys R Us, where her duties included interviewing, hiring, and orienting new employees as well as supervising cashiers.  (Hughes Aff. ¶ 13; Hughes Dep. at 78-79.)  Hughes also made the promotion decision based on the fact that he considered her to be a great merchandiser with good leadership and

communication skills.  (Hughes Aff. ¶ 13.)

        5.     The Second Tuscaloosa/Lomb Position

On June 12, 2005, Hughes promoted Jonathan Hollabaugh, a 21 year old white male, to the store manager position at the Tuscaloosa/Lomb location.  (Hughes Aff. ¶ 14; Hughes Dep. at 132.)  Hughes made that decision based on Hollabaugh's demonstrated ambition, initiative, ability to perform in merchandising, prior management experience with Target, and communication skills.  (Hughes Aff. ¶ 14; Hughes Dep. at 247.)

        6.     The Second Pelham Position[11]

On August 28, 2005, Hughes promoted Amanda Chhetri Dodson, a white female, to the Pelham store manager position.[12]  (Hughes Aff. ¶ 15.)  Hughes made the decision to promote Dodson because she was a long term employee who had proven herself as a Shift Supervisor at the Rocky Ridge location and possessed good communication and leadership skills.  (Hughes Aff. ¶ 15.)  In fact, Dodson had often

---

[11] Heath McAlister, who had been promoted to the Pelham store in June 2005, was moved to Leeds as a Store Manager in August 2005, thus creating the second opening at the Pelham location.  (Dodson Dep. at 159-60.)

[12] Prior to June 2005, Dodson had not made up her mind that she was ready to be promoted.  (Dodson Dep. at 44.)  But as of June 2005, she had decided that she was ready. (Dodson Dep. at 44-45.)  She did not, however apply for the store position.  (Dodson Dep. at 54-55.)  Instead, Dodson had several phone conversations with Hughes about moving to Pelham. (Dodson Dep. at 49-56.)

performed the functions of an Assistant Store Manager while working at Rocky Ridge, since that store did not consistently have an Assistant Store Manager. (Hughes Aff. ¶ 15.)  She was highly recommended by her Store Manager, Ron Kubina, for the Pelham location promotion, despite the fact that she had not completed the three phases of the training modules for advancement to Store Manager.  (Hughes Aff. ¶ 15; Hughes Dep. at 139; Dodson Dep. at 45-46.)

In addition to talking to Ron Kubina, Hughes also talked to Rodney Perkins, Training Store Manager, for a recommendation on both Dodson and Thomas. (Hughes Aff. ¶ 15.)  Perkins told Hughes that the decision between those two candidates was a "toss-up" as to which one would be more qualified to run a store. (Perkins Dep. at 61-62.)  Hughes then reasoned that if Perkins saw it as a toss-up, having worked with Dodson for six weeks and Thomas for a longer time, that Dodson's "upside" or potential was better than Thomas's.  (Hughes Aff. ¶ 15.)

7.     The Third Tuscaloosa/Lomb Store Position

On August 28, 2005, Hughes promoted Jimmy Rogers, a 53 year old male, to the Store Manager position at the Tuscaloosa/Lomb location.  (Hughes Aff. ¶ 16; Hughes Dep. at 168-69.)  At the time of his promotion, Rogers had been employed with CVS for 14 years.  (Hughes Dep. at 168-70.)  During that lengthy period of service, Rogers had demonstrated his good communication and leadership skills, as

well as his skills as an Assistant Store Manager and his willingness to be flexible.
(Hughes Aff. ¶ 16.)

8.    The Selma Position

On or about August 22, 2005, Hughes promoted Ray Miller to the Store
Manager position in Selma.  (Hughes Aff. ¶ 17; Hughes Dep. at 212-13.)  Hughes
chose Miller for the promotion because he had proven his skills as a store manager
and lived right outside of the Prattville area which would make it convenient for him
to commute to the Selma store.  (Hughes Aff. ¶ 17; Hughes Dep. at 215.)

9.    The Columbiana Position

On December 25, 2005 Hughes promoted Lonnie Love, a 43 year old white
male, to the store manager position at the Columbiana location.  (Hughes Aff. ¶ 18;
Hughes Dep. at 178.)  Hughes made that promotion decision after interviewing three
individuals – Paul Mims, Benjamin Thomas, and Lonnie Love.[13]  (Hughes Dep. at
180.)  Love had set himself apart during the interview process by discussing the
administrative side of management and demonstrating his outlook on a manger's

_____

[13] This was the first time Hughes conducted an interview for a store manager position
with Thomas and took detailed notes of the interview.  (Hughes Dep. at 182-83.)  Hughes had
never before thought that Thomas was a qualified candidate but "at this time that I actually had
the opening, I think by that time he had worked for Rodney, he had actually went up to Leeds and
actually got some experience up in there, so I think that he had had an opportunity to gain some
ground, and which he hadn't made in the past."  (Hughes Dep. at 184.)  In the timeline of events,
the interview occurred after Thomas filed his charge of discrimination on September 6, 2005.
(Hughes Dep. at 183-84.)

responsibilities.  (Hughes Aff. ¶ 18.)  And as an Assistant Store Manager Love had demonstrated good leadership and merchandising skills and had obtained experience with controlling profits, store conditions, customer service, and scheduling.  (Hughes Aff. ¶ 18.)

In contrast, Hughes was disappointed with Thomas's interview.  (Hughes Aff. ¶ 19.)  Thomas told Hughes that he did not have any weaknesses.  This opinion was contrary to that of Hughes, Long, and several store managers who had been solicited for input regarding Thomas's performance, causing Hughes to believe that since Thomas was incapable of accurately judging himself, he might similarly have difficulty judging others.  (Hughes Aff. ¶ 19; Hughes Dep. at 190.)  Hughes was also concerned with Thomas's response to an interview question regarding the coaching and counseling process of subordinates.  Thomas stated that his idea of coaching and counseling employees would be to cut the employee's hours, therefore hitting counseled employees in the pocketbook; but, at the same time, Thomas felt that coaching and counseling were not usually necessary because employees always did what Thomas told them to do.  (Hughes Aff. ¶ 19.)  Hughes did not feel that this approach was consistent with the CVS plan of business.  (Hughes Aff. ¶ 19.)

**IV.    Applicable Substantive Law and Analysis**

    **A.    Section 1981 Race Discrimination and Retaliation (Count One)**

        **1.    Failure to Promote Race Discrimination**

42 U.S.C. § 1981 prohibits employers from discriminating against employees because of their race. In the Eleventh Circuit, § 1981 race discrimination claims are analyzed using the same framework as Title VII claims. See Hudson v. Mr. Burch Formal Wear, Inc., 2006 WL 2351837, No. 05-16269, at *1 (11th Cir. Aug. 15, 2006) (citing Cooper v. Southern Co., 390 F.3d 695, 724-25 (11th Cir. 2004)); see also Rice-Lamar v. City of Ft. Lauderdale, Fla., 232 F.3d 836, 843 n. 11 (11th Cir. 2000) and Cross v. Alabama, 49 F.3d 1490, 1507-08 (11th Cir. 1995). Thus, to succeed on a § 1981 race claim, the plaintiff bears the burden of producing a prima facie case of discrimination. Holifield v. Reno, 115 F.3d 1555, 1561 (11th Cir. 1997). A plaintiff may discharge his burden by offering "direct evidence, circumstantial evidence or statistical evidence."[14] Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th

---

[14] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment (doc. # 25) analyzes the case only from the standpoint of the McDonnell Douglas burden-shifting analysis used for circumstantial cases. (Doc. # 25 at 27-31.) Indeed, Thomas testified in his deposition that he never heard Hughes say anything that would lead him to believe that promotion decisions were made discriminatorily on the basis of race and that he had no other reason to believe Hughes was awarding positions based upon race. (Thomas Dep. at 97-98.) That Thomas later testified, in an affidavit, that he believed Hughes discriminated against him on account of his race because Rodney Perkins told him that Hughes was a "racist" is a sham and will be disregarded by the court. (See Thomas Aff. ¶ 14.) See McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir.2003) (quoting Van T. Junkins & Assoc., Inc. v.

Cir. 1998).

Since plaintiff proceeds herein using only circumstantial evidence, he must show as an initial matter: (1) that he belongs to a protected class; (2) that he applied for and was qualified for the position for which the employer was seeking applicants; (3) that he was denied the promotion; and (4) that another equally or less qualified individual outside of the protected class received the promotion or that the position remained open.  See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005); see also Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004). If Thomas produces sufficient evidence to establish the prima facie case, the burden shifts to CVS to articulate a legitimate, non-discriminatory reason for the promotion decision.  See Vessels, 408 F.3d at 767; see also Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642-43 (11th Cir. 1998).  Upon articulation, the burden shifts back to Thomas to prove that the articulated reason was as a pretext for discrimination.  See id. at 643; see also McDonnell Douglas v. Green, 411 U.S. 792, 802-03 (1973).

One method of proving pretext is showing that the employer's proffered explanation is unworthy of credence.  St. Mary's Honor Center v. Hicks, 509 U.S.

---

U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir.1984)).  As such, Defendant's Motion (doc. # 26) to Strike, as outlined on pages 3-4, is **GRANTED**.

502, 517 (1993).  It is upon this method of proving pretext that Thomas relies.  (See Doc. # 25 at 32-35.)  However, where qualification is at issue, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [individual] who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated by [race].  We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer."  Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted).

Plaintiff alleges that he was discriminatorily denied nine separate promotions because of his race in violation of Section 1981:[15] (1) the January 23, 2005 Five Points West position to which Justin Carr was promoted; (2) the May 1, 2005 Tuscaloosa/Lomb position to which Charles Bennie McGraw was promoted; (3) the

---

[15] Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment is not at all clear as to which positions plaintiff contends were awarded discriminatorily on the basis of race.  (See Doc. # 25 at 27-31.)  While his fact section outlines ten separate promotions (see doc. # 25 at 9-19), plaintiff's complaint only alleges six contested store manager positions (see compl. ¶ 7).  At a maximum, only nine positions can properly be considered herein as having been awarded discriminatorily on the basis of race or age.  This is because Plaintiff's Response (doc. # 25), when mentioning the position filled by Paul Mims, fails to outline *when* Mims was promoted or provide any details supporting a claim of discrimination related to that position. (See Doc. # 25 at 19.)  Defendant's brief (doc. # 13) similarly sheds no light on these questions.

June 5, 2005 Pelham position to which Heath McAlister was promoted; (4) the June 5, 2005 Bluff Park position to which Kimberly Clay was promoted; (5) the June 12, 2005 Tuscaloosa/Lomb position to which Jonathan Hollabaugh was promoted; (6) the August 28, 2005 Pelham position to which Amanda Chhetri Dodson was promoted; (7) the August 28, 2005 Tuscaloosa/Lomb position to which Jimmy Rogers was promoted; (8) the August 22, 2005 Selma position to which Ray Miller was promoted; and (9) the December 25, 2005 Columbiana position to which Lonnie Love was promoted.  (See Doc. # 25 at 9-19; see also generally Compl.)  Each of those positions will be considered in turn.  And for purposes of summary judgment, the court assumes, without deciding, that plaintiff has established a prima facie case of race discrimination for each of those positions.[16]

### i.        The January 23, 2005 Five Points Position

Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Justin Carr for the Five Points position: Carr had performed well as an Assistant Store Manager, had management experience prior to his employment with CVS, was highly recommended for the promotion by a top store manager, and had great

---

[16] In fact, the court does have some reservations as to whether Thomas was qualified for promotion in 2005 since he had demonstrated at that time that his performance was in need of improvement.  See Vessels, 408 F.3d at 768.

communication, merchandising, and leadership skills.  (Hughes Aff. ¶ 10.)  See Chapman, 229 F.3d at 1033-35 ("Subjective evaluations of a job candidate are often critical to the decisionmaking process, and if anything, are becoming more so in our increasingly service-oriented economy . . . Personal qualities also factor heavily into employment decisions concerning supervisory or professional positions."); see also Denney v. City of Albany, 247 F.3d 1172, 1186 (11th Cir. 2001) ("Personal qualities . . . factor heavily into employment decisions concerning supervisory or professional positions.  Traits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position.").  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby v. Reynolds Metal Co., 821 F.2d 590, 594 (11th Cir. 1987) (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

Counsel for plaintiff has the following theories on pretext: (1) Carr had only been an assistant manager for six to seven months before being promoted to store

manager (see doc. # 25 at 9); (2) Thomas's supervisor, Robert Evans, had recommended Thomas for a store manager position of a larger volume store;[17] (see doc. # 25 at 24-26); (3) the "needs improvement" performance evaluation that Thomas received was "bogus" and Hughes did not hold "young white workers to that same evaluation;" (see doc. # 25 at 19-20, 23-24); (4) Thomas was told by Hughes that he was required to complete training prior to being promoted, but there were white employees that Hughes promoted who did not complete the three phases of training (see doc. # 25 at 24); (5) CVS was inconsistent in its position statement to the EEOC (see doc. # 25 at 24-26); and (6) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26).  Plaintiff himself adds that he believes he should have been chosen for this position over Carr because Carr had only been with the company for a short period of time prior to being promoted.  (Thomas Dep. at 125.)

---

[17] The factual section of Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment makes mention of the fact that Rodney Perkins, the training store manager, had recommended to Hughes that Thomas was ready to be promoted as of July 2004.  (See Doc. # 25 at 7.)  Assuming that such recommendation had been made, it does nothing to bolster plaintiff's argument of pretext and fails for the same reason as does the recommendation by Evans.  Moreover, when given the opportunity to recommend Thomas over another candidate, Perkins declined to do so.  (Perkins Dep. at 61-62.)

Pretext arguments 1 and 2 as outlined above do nothing more than simply question the wisdom of the decision reached by CVS to choose Carr over Thomas for the Five Points position.  See Alexander, 207 F.3d at 1339.  Thomas's longevity with the company and the recommendation of a store manager can indeed be construed as positive factors suggesting that Thomas may be a viable candidate for the position. But those factors do not outweigh the articulated strengths of Carr, which plaintiff does nothing to rebut.  See Ash v. Tyson Foods, Inc., 190 Fed. Appx. 924, 927 (11th Cir. 2006) ("[C]omparative qualifications and other alleged indica of discrimination (i.e., subjective criteria used by the decision-maker, plaintiff's belief that his (or her) qualifications were superior), were held insufficient for a factfinder reasonably to find that the decision was not based on the qualifications of the applicants.").  That is, Thomas has not met his burden under Cooper v. Southern Co. to show that the disparities between his qualifications and those of Carr were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Carr over Thomas.[18]  390 F.3d 695, 732 (11th Cir. 2004).  And it is not the job of the court to second-guess the wisdom of an employer's decision as long as

---

[18] This is not a situation in which the court believes that the employer misjudged the qualifications of the two candidates.  And even if it were, such a situation would not necessarily expose CVS to liability.  See Walker v. Mortham, 158 F.3d 1177, 1190 (11th Cir. 1998), cert. denied, 528 U.S. 809 (1999).

the decision is not motivated by race.  See Alexander v. Fulton County, Ga., 207 F.3d 1303, 1341 (11th Cir. 2003).

Pretext argument 3 also fails.  A review of Thomas's performance was placed in his file in March 2005 which rated his performance as "needs improvement." Plaintiff argues that the evaluation was "bogus" but *not* in the sense that he did not deserve that "needs improvement" rating.  Rather, Thomas argues that when white employees were counseled on their job performance, such counsel was done verbally to prevent a paper trail of sub-par performance. But in the case of comparing Thomas and Carr, there is nothing in the record to suggest that Carr ever required a written or verbal "needs improvement" rating.  Indeed, then, it was legitimate for Hughes to consider Thomas's below-average performance rating as a *factor* weighing against promoting him to the Five Points position.  See Alexander, 207 F.3d at 1341; see also Wilson, 376 F.3d at 1092.  There is nothing in the record to suggest that Thomas's race played any role in the decision.

With pretext argument 4 comes the first legitimately disputed fact in the record. Thomas testified in his affidavit that he was told by Richard Hughes that the completion of all three phases of a manager development training program was

required before a candidate could be promoted to store manager.[19]  (Thomas Aff. ¶ 7.)  In contrast, Hughes testified that an individual may be promoted to a store manager position without having completed phases 1, 2, and 3 of the development program.  (Hughes Dep. at 85.)  Therefore, for purposes of summary judgment, the court assumes that Hughes did in fact tell Thomas that he had to complete all three phases of training before he could be considered for a promotion.  But even assuming that CVS violated corporate policy by promoting Carr to store manager before he had completed all three phases of training, this does not by itself indicate racial discrimination.  See Springer v. Convergys Customer Mgmt. Group, Inc., 509 F.3d 1344, 1350 (11th Cir. 2007) (citing Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual.").  Had Thomas met CVS's proffered reasons for promoting Carr "head-on" and rebutted them, the dispute over the training

---

[19] Plaintiff's Response (doc. # 25) in Opposition to Defendant's Motion for Summary Judgment states that Rodney Perkins testified that it was CVS policy to require the completion of all three phases of a training module prior to being promoted.  (See Doc. # 25 at 24.)  However, Perkins' deposition testimony does not support that contention – instead, when asked whether he knew of any *policy* within CVS on the time an individual stays an assistant manager before they are promoted to store manager, Perkins answered "There was not one that I was aware of." (Perkins Dep. at 57.)  Instead, Perkins testified that it was the *practice* of CVS to have individuals complete all three phases before they became store manager.  (Perkins Dep. at 57.)

requirement might have suggested some bias.  See Wilson, 376 F.3d at 1088.  But standing alone, the training issue does not constitute sufficient evidence to find pretext.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 146 (2000).

Pretext argument 5 is perhaps the weakest of them all.  That argument is premised on the fact that the position statement provided by counsel for CVS to the EEOC is inconsistent with the testimony of certain of CVS's management employees. (See Doc. # 25 at 24-25.)  Specifically, plaintiff argues that in the position statement to the EEOC, CVS supported its decisions not to promote Thomas on two key facts: (1) that store manager Donald Long told Hughes that Thomas was not yet ready to be a store manager; and (2) that at no time did Thomas indicate he was interested in store manager vacancies.  (See Doc. # 25 at 24-25.)  In contrast, the testimony received in this case indicates some subtle differences from those broader statements: (1) that Long told Hughes that "given [Thomas's] experience that he has had, you know, I would certainly, you know, risk him running a low volume store with some help." (Long Dep. at 63-64.); and (2) Thomas had expressed his hesitancy to be an acting store manager because he felt ready to be promoted, and never indicated to Perkins that he did not feel ready to take on a promotion.  (Perkins Dep. at 39, 115.)

The EEOC position statement is not evidence in this case and cannot be used to create an issue of fact.  See Bowden v. Wal-Mart Stores, Inc., 124 F. Supp.2d 1228,

1236 (M.D. Ala. 2000) (pleadings are not evidence). Pleadings are not evidence in part because they are written by retained counsel. There is no evidence that the EEOC position statements, both signed by counsel Jaclyn Kugell, were ever reviewed by anyone at CVS. See Chapman, 229 F.3d at 1038 (where position statement, prepared by employee of defendant and reviewed by decisionmaker, was redacted at trial, such redaction was harmless error). Moreover, to the extent plaintiff is arguing pretext in that Hughes should not have been concerned by Long's less-than-ringing endorsement of Thomas's ability to take on the role of store manager, that argument is also without merit. It is not the job of the court to second-guess the wisdom of an employer's decision as long as the decision is not motivated by race. See Alexander, 207 F.3d at 1341; see also Lee v. GTE Florida, Inc., 226 F.3d 1249, 1254 (11th Cir. 2000) (The court's "role is to prevent unlawful [promotion] practices, not to act as a super personnel department that second guesses employers' business judgments.") (internal citations omitted).

Pretext argument 6 is premised on portions of Thomas's sham affidavit, and therefore must be stricken from consideration. In his deposition given on April 10, 2007, Thomas testified that he did not talk to anyone about his belief that he was being discriminated against, only that he felt that it was taking a "long time" to be promoted to store manager. (Thomas Dep. at 129-30; Perkins Dep. at 172-73.) But

29

in his affidavit, signed more than 8 months later on December 21, 2007, Thomas says that he complained to Donald Long and Rodney Perkins about "Hughes' discriminatory treatment." (Thomas Aff. ¶ 14.) This is a direct contradiction. "Under the law of this Circuit, we may disregard an affidavit submitted solely for the purpose of opposing a motion for summary judgment when that affidavit is directly contradicted by deposition testimony. 'When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact [for summary judgment], that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony.' Such an affidavit would be a sham." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir.2003) (quoting Van T. Junkins & Assoc., Inc. v. U.S. Industries, Inc., 736 F.2d 656, 657 (11th Cir.1984)).[20]

Moreover, pretext argument 6, as it argues that "Long shared that he too, as an African American, had been denied promotions when he felt he was more qualified" (see doc. # 25 at 26) is based entirely on Thomas's affidavit, which Long himself denies.[21] This is an out-of-court statement offered for the truth of the matter asserted,

---

[20] Therefore, Defendant's Motion (doc. # 26) to Strike, as outlined on pages 1-2, is **GRANTED**.

[21] At this deposition, Long was asked:

    Q:    I'm asking if you shared with him your experience with CVS and being

and as such is inadmissible on summary judgment.[22]  But even assuming, *arguendo*,

that the statement were admissible, it would do nothing to support plaintiff's quest

for showing pretext in the decision-making process.  Without any knowledge of the

position Long believes he was passed over for, or the relative qualifications of the

candidates, an unsubstantiated belief of discrimination cannot support a claim for

pretext.  See Brooks v. County Comm'n of Jefferson County, 446 F.3d 1160, 1163

(11th Cir. 2006) ("[A] plaintiff cannot prove pretext by simply arguing . . . that he

was better qualified than the [person] who received the position he coveted.")

(internal citations omitted).

There is no argument or combination of arguments contained in the laundry list

of plaintiff's attempts to show pretext that comes close to establishing that the

contested promotion decision was motivated by race.[23]  See Alexander, 207 F.3d at

---

passed over?

. . .

Q:    I'm asking about a conversation.  Did you share with him in that
      conversation your own personal experience?

A:    I shared with him the fact that you have to just work hard and do your job
      and you will be promoted.

(Long Dep. at 74-75.)

[22] On that point, Defendant's Motion (doc. # 26) to Strike, page 8 paragraph 3, is
**GRANTED**.

[23] As a final effort to establish pretext, Thomas argues that Hughes engaged in a practice
of failing to promote African Americans to available store manager positions.  (See Doc. # 25 at
3-4, 33-35.)  "From September 2001 when Hughes was promoted to the District Manager

1339.  Therefore, defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the January 23, 2005 Five Points position, is due to be granted.

### ii.      The May 1, 2005 Tuscaloosa/Lomb Position

Consistent with its burden of production under <u>McDonnell Douglas</u>, CVS articulates legitimate, non-discriminatory reasons for selecting Charles Bennie McGraw for the Tuscaloosa/Lomb position: McGraw had demonstrated ambition, a willingness to transfer, and solid communication and merchandising skills.  (Hughes Aff. ¶ 11.)  <u>See</u> <u>Chapman</u>, 229 F.3d at 1033-35; <u>see also</u> <u>Denney</u>, 247 F.3d at 1186. Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1028; <u>see</u> <u>also</u> <u>Grigsby</u>, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

Counsel for plaintiff has the following theories on pretext: (1) McGraw had

---

position until the time when Thomas filed his charge of discrimination, Hughes had promoted only one African American to a store manager position."  (Doc. # 25 at 3-4, 23, 33-35.)  But the proffered statistics, offered without any analytical foundation, do nothing to aid the court in the pretext analysis.  <u>See</u> <u>Wilson v. B/E Aerospace, Inc.</u>, 376 F.3d 1079, 1089 (11th Cir. 2004) (citing <u>Howard v. B.P. Oil Co., Inc.</u>, 32 F.3d 520, 524 (11th Cir. 1994) and <u>Evans v. McClain of Ga., Inc.</u>, 131 F.3d 957, 963 (11th Cir. 1997) (internal citations omitted)).

been an assistant manager for one year at the time he was promoted to store manager and was later demoted to shift manager (see doc. # 25 at 10); (2) Thomas's supervisor, Robert Evans, had recommended Thomas for a store manager position of a larger volume store;[24] (see doc. # 25 at 24-26); (3) the "needs improvement" performance evaluation that Thomas received was "bogus" and Hughes did not hold "young white workers to that same evaluation" – McGraw was rated as "needs improvement" as an assistant manager and was nonetheless promoted to store manager (see doc. # 25 at 19-20, 23-24); (4) Thomas was told by Hughes that he was required to complete training prior to being promoted, but there were white employees that Hughes promoted who did not complete the three phases of training (see doc. # 25 at 24); (5) CVS was inconsistent in its position statement to the EEOC (see doc. # 25 at 24-26); and (6) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26).  Moreover, plaintiff himself did not express any opinion in his deposition as to why he felt he was better qualified for this position than McGraw.  (Thomas Dep. at 272.)

Pretext arguments 1 and 2, the qualifications arguments, fail for the same

---

[24] See footnote 17, supra.

reason as they did in Section IV.A.1.i., <u>supra</u>.  Thomas has failed to meet his burden to show that the disparities between his qualifications and those of McGraw were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" McGraw over Thomas.  <u>Cooper</u>, 390 F.3d at 732; <u>see also</u> <u>Alexander</u>, 207 F.3d at 1339, 1341.

Pretext argument 3, the performance evaluation argument, fails *despite* the fact that plaintiff contends that McGraw was rated as "needs improvement" as an assistant manager and was nonetheless promoted to store manager.  Plaintiff's statement, which insinuates that Hughes knew of McGraw's "needs improvement" rating *before* he hired him to the  store manager position, is simply false.  (<u>See</u> Doc. # 25 at 20.) Instead, it is clear that McGraw received a "needs improvement" performance evaluation *after* he had been promoted to the Tuscaloosa/Lomb position.  (Hughes Dep. at 247-48.)  And it is not for the court to second-guess the employer's wisdom in deciding to promote a candidate *without* a "needs improvement" rating (verbal or written) over one who had received such a rating.  <u>See</u> <u>Alexander</u>, 207 F.3d at 1341.

The training issue advanced in pretext argument 4, the EEOC statement issue advanced in pretext argument 5, and the complaint issue advanced in pretext argument 6, all which contain no argument unique to the position awarded to McGraw, fail for the same reasons they did in Section IV.A.1.i., <u>supra</u>.

34

There is no argument or combination of arguments contained in the laundry list of plaintiff's attempts to show pretext that comes close to establishing that the contested promotion decision was motivated by race.[25]  See Alexander, 207 F.3d at 1339.  Therefore, defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the May 1, 2005 Tuscaloosa/Lomb position, is due to be granted.

### iii.    The June 5, 2005 Pelham Position

Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Heath McAlister for the Pelham position: McAlister had at least 8 years of background experience in management, great communication skills, and had demonstrated his initiative and ambition.  (Hughes Aff. ¶ 12.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  In contrast, similar skills were not seen in Thomas, who had received a "needs improvement" rating on his most recent performance review and was not recommended by his manager for the promotion.  (Hughes Aff. ¶ 12; Hughes Dep. at 102.)  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated

---

[25] See footnote 23, supra.

reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

Counsel for plaintiff has the following theories on pretext: (1) McAlister had only been with the company for two months at the time he was promoted (see doc. # 25 at 11); (2) Thomas's supervisor, Robert Evans, had recommended Thomas for a store manager position of a larger volume store;[26] (see doc. # 25 at 24-26); (3) the "needs improvement" performance evaluation that Thomas received was "bogus" and Hughes did not hold "young white workers to that same evaluation;" McAlister was promoted by Hughes without a performance review (see doc. # 25 at 11, 23-24); (4) at the time he was promoted, McAlister had only begun training on Phase 1 of the management program; in contrast, Thomas was told by Hughes that he was required to complete training prior to being promoted (see doc. # 25 at 10, 24); (5) CVS was inconsistent in its position statement to the EEOC (see doc. # 25 at 24-26); and (6) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26).

---

[26] See footnote 17, supra.

Plaintiff himself adds that he believes he should have been chosen for the position over McAlister because he "had more time, more longevity with the company" and McAlister "was only at CVS no more than about four months as an assistant manager before he became a store manager" and was not "head and shoulders" above Thomas in his performance as an assistant manager.  (Thomas Dep. at 111-16.)

Pretext arguments 1 and 2, the qualifications arguments, fail for the same reasons they did in Section IV.A.1.i., supra.  Thomas has failed to meet his burden to show that the disparities between his qualifications and those of McAlister were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" McAlister over Thomas.  Cooper, 390 F.3d at 732; see also Alexander, 207 F.3d at 1339, 1341.

Pretext argument 3, the performance evaluation argument, also fails for the same reason it did in Section IV.A.1.i., supra.  Although in the case of the McAlister promotion Thomas adds the argument that McAlister was promoted before he received any evaluation of his performance, it is wholly legitimate, and suggests no bias, for an employer to choose to promote an employee who never required a verbal or written "needs improvement" performance evaluation.  It is not for the court to second-guess the employer's wisdom in deciding to promote a candidate *without* a "needs improvement" rating (verbal or written) over one who had received such a

rating.  See Alexander, 207 F.3d at 1341.

The training issue advanced in pretext argument 4, the EEOC statement issue advanced in pretext argument 5, and the complaint issue advanced in pretext argument 6, all which contain no argument unique to the position awarded to McAlister, fail for the same reasons they did in Section IV.A.1.i., supra.

There is no argument or combination of arguments contained in the laundry list of plaintiff's attempts to show pretext that comes close to establishing that the contested promotion decision was motivated by race.[27]  See Alexander, 207 F.3d at 1339.  Therefore, defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the June 5, 2005 Pelham position, is due to be granted.

### iv.    The June 5, 2005 Bluff Park Position

Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Kimberly Clay for the Bluff Park position: Clay had demonstrated her merchandising, leadership, and communication skills, and both store managers that she had worked under said that she was ready to run a store.  (Hughes Aff. ¶ 13.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  In contrast, Hughes believed

---

[27] See footnote 23, supra.

that Thomas's communication skills were holding him back and would inhibit his ability to build a team.  (Hughes Aff. ¶ 13; Hughes Dep. at 123.)  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

Counsel for plaintiff has the following theories on pretext: (1) at the time she was promoted, Clay had been with CVS for less than two years (see doc. # 25 at 11); (2) Thomas's supervisor, Robert Evans, had recommended Thomas for a store manager position of a larger volume store[28] (see doc. # 25 at 19-20); (3) the "needs improvement" performance evaluation that Thomas received was "bogus;" Hughes did not subject Clay to a formal written performance review, and instead counseled her about her performance verbally (see doc. # 25 at 11-12, 20-23, 34); (4) Thomas was told by Hughes that he was required to complete training prior to being promoted, but there were white employees that Hughes promoted who did not complete the three phases of training (see doc. # 25 at 24); (5) CVS was inconsistent

---

[28] See footnote 17, supra.

in its position statement to the EEOC (see doc. # 25 at 24-26); and (6) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26).  Plaintiff himself adds that he should have been chosen for the position over Clay because of his "longevity" and because Clay's co-workers had mixed opinions about her skills. (Thomas Dep. at 118, 121.)

Pretext arguments 1 and 2, the qualifications arguments, fail for the same reason as they did in Section IV.A.1.i., supra.  Thomas has failed to meet his burden to show that the disparities between his qualifications and those of Clay were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Clay over Thomas.  Cooper, 390 F.3d at 732; see also Alexander, 207 F.3d at 1339, 1341.

Pretext argument 3, that the "needs improvement" evaluation given to Thomas was bogus because Clay was only counseled informally about her performance, looks good on the surface but has no depth.  CVS has continuously maintained that Thomas was not promoted to a store manager position in 2005 because he was not meeting CVS's expectations in his role as Assistant Store Manager as evidenced by his then most recent "needs improvement" rating on his performance evaluation.  (See Doc.

# 13 at 40.)  Thomas attempts to show that the lack of a formal review for white comparator Clay facilitated her advancement *despite* the fact that she was verbally "counseled . . . about her poor job performance."  (Doc. # 25 at 11.)  But the testimony does not bear out that Clay was *ever* counseled about poor job performance rising to the level of needing improvement.  In fact, all that Hughes says is that he *coached* Clay.  (Hughes Dep. at 78-79.)  Nothing even remotely suggests that Hughes coached Clay because he was concerned that her performance needed improvement prior to the time she was selected for the store manager position.  (Hughes Dep. at 76-79.)  Therefore, pretext argument 3 as related to Clay fails for fundamentally the same reason as it did in Section IV.A.1.iii., supra.  It is not for the court to second-guess the employer's wisdom in deciding to promote a candidate *without* a "needs improvement" rating (verbal or written) over one who had received such a rating.  See Alexander, 207 F.3d at 1341.

The training issue advanced in pretext argument 4, the EEOC statement issue advanced in pretext argument 5, and the complaint issue advanced in pretext argument 6, all which contain no argument unique to the position awarded to Clay, fail for the same reasons they did in Section IV.A.1.i., supra.

There is no argument or combination of arguments contained in the laundry list of plaintiff's attempts to show pretext that comes close to establishing that the

41

contested promotion decision was motivated by race.[29]  See Alexander, 207 F.3d at 1339.  Therefore, defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the June 5, 2005 Bluff Park position, is due to be granted.

### v.    The June 12, 2005 Tuscaloosa/Lomb Position

Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Jonathan Hollabaugh for the Tuscaloosa/Lomb position:  Hollabaugh had demonstrated his ambition, initiative, communication, and merchandising skills, and had prior management experience at another company.  (Hughes Aff. ¶ 14.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

Counsel for plaintiff has the following theories on pretext: (1) Hollabaugh had

---

[29] See footnote 23, supra.

worked only for two months as an assistant manager before he was promoted to store manager (see doc. # 25 at 12); (2) Thomas's supervisor, Robert Evans, had recommended Thomas for a store manager position of a larger volume store[30] (see doc. # 25 at 19-20); (3) the "needs improvement" rating that Thomas received on his performance evaluation was "bogus" and not the real reason he was denied the position; as an assistant store manager, Hollabaugh was rated by Hughes as "needs improvement" but promoted to store manager anyway (see doc. # 25 at 12, 20-23, 34); (4) at the time he was promoted, Hollabaugh had not completed the management training  program; in contrast, Thomas was told by Hughes that he was required to complete training prior to being promoted (see doc. # 25 at 24, 30); (5) CVS was inconsistent in its position statement to the EEOC (see doc. # 25 at 24-26); and (6) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26). It is important to note that plaintiff himself does not know anything about Hollabaugh and does not comment on why he believes he should have been awarded the Tuscaloosa/Lomb position over Hollabaugh.

Pretext arguments 1 and 2, the qualifications arguments, fail for the same

---

[30] See footnote 17, supra.

reasons they did in Section IV.A.1.i., supra.  Thomas has failed to meet his burden to show that the disparities between his qualifications and those of Hollabaugh were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen" Hollabaugh over Thomas.  Cooper, 390 F.3d at 732; see also Alexander, 207 F.3d at 1339, 1341.

Pretext argument 3, the performance evaluation argument, fails for the same reason it did in Section IV.A.1.ii., supra.  Plaintiff's argument as related to Hollabaugh insinuates that Hughes knew of Hollabaugh's "needs improvement" rating *before* he hired him to the store manager position.  (See Doc. # 25 at 12, 20.) That argument is simply false.  It is clear that Hollabaugh received a "needs improvement" performance evaluation *after* he had been promoted to the Tuscaloosa/Lomb position.  (Hughes Dep. at 250-51.)  In contrast, Hughes knew of Thomas's "needs improvement" rating *before* the contested Tuscaloosa/Lomb position became available.  And it is not for the court to second-guess the employer's wisdom in deciding to promote a candidate *without* a "needs improvement" rating (verbal or written) over one who had received such a rating.  See Alexander, 207 F.3d at 1341.

The training issue advanced in pretext argument 4, the EEOC statement issue advanced in pretext argument 5, and the complaint issue advanced in pretext

44

argument 6, all which contain no argument unique to the position awarded to Hollabaugh, fail for the same reasons they did in Section IV.A.1.i., supra.

There is no argument or combination of arguments contained in the laundry list of plaintiff's attempts to show pretext that comes close to establishing that the contested promotion decision was motivated by race.[31]  See Alexander, 207 F.3d at 1339.  Therefore, defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the June 12, 2005 Tuscaloosa/Lomb position, is due to be granted.

### vi.    The August 28, 2005 Pelham Position

Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Amanda Chhetri Dodson for the Pelham position: Dodson was a proven employee, a good shift supervisor who effectively performed the functions of an assistant store manager, and a good merchandiser.  (Hughes Aff. ¶ 15.)  Dodson was also highly recommended by her store manager for the promotion.  (Hughes Aff. ¶ 15; Hughes Dep. at 139.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder

---

[31] See footnote 23, supra.

to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028;

see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is

exacting; he can only prevail through significantly probative evidence that the

proffered reasons are a pretext for discrimination).

Counsel for plaintiff has the following theories on pretext: (1) Dodson initially

told Hughes that she was not interested in being promoted; in contrast, Thomas had

expressed to Hughes his interest in being promoted (see doc. # 25 at 13, 15) – Hughes

described Dodson as reserved and not outgoing (see doc. # 25 at 14) – Dodson did

not have much management experience prior to being promoted; although she

testified that she felt ready for the promotion because she had trained under Perkins

for a month, Thomas had been trained by Perkins for over a year (see doc. # 25 at 14-

15, 25); (2) Thomas's supervisor, Robert Evans, had recommended Thomas for a

store manager position of a larger volume store[32] (see doc. # 25 at 19-20); (3) the

"needs improvement" rating that Thomas received on his performance evaluation was

"bogus" and not the real reason he was denied the position; Dodson was never

formally evaluated as a shift supervisor or as an assistant store manager but had been

verbally counseled by Hughes regarding deficiencies in her job performance, yet

promoted nonetheless (see doc. # 25 at 13, 15, 23-24); (4) at the time she was

---

[32] See footnote 17, supra.

promoted, Dodson was not told that she had to complete the management training program; in contrast, Thomas was told by Hughes that he was required to complete training prior to being promoted (see doc. # 25 at 14, 24, 30); (5) CVS was inconsistent in its position statement to the EEOC (see doc. # 25 at 24-26); and (6) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26). Plaintiff himself adds that he believes he was discriminatorily denied the Pelham position because Dodson had only been an assistant manager for four months, while he had been with the company longer and had been an assistant manager for two years or more.  (Thomas Dep. at 106-07.)

Pretext argument 1 advances several reasons why Thomas holds the belief that he was better suited for the Pelham position than Dodson.  But none of those self-serving assertions outweigh the articulated strengths of Dodson, which Thomas does nothing to rebut.  See Ash, 190 Fed. Appx. at 927; see also Cooper, 390 F.3d at 732. Pretext argument 2 fails for the same reason.  The recommendation from one store manager that Thomas be promoted can indeed be construed as a positive factor suggesting he may be qualified for the position.  But it does nothing to rebut the articulated strengths of Dodson.  See Ash, 190 Fed. Appx. at 927; see also Cooper,

390 F.3d at 732.

Pretext argument 3, the "needs improvement" argument, fails for essentially the same reasons as it did in Section IV.A.1.iv., <u>supra</u>.  CVS has continuously maintained that Thomas was not promoted to a store manager position in 2005 because he was not meeting CVS's expectations in his role as Assistant Store Manager as evidenced by the "needs improvement" rating he received on his performance evaluation.  (<u>See</u> Doc. # 13 at 40.)  Thomas attempts to show that the lack of a formal review for white comparator Dodson facilitated her advancement.  (Doc. # 25 at 23-24.)  But the testimony does not bear out that Dodson was *ever* even verbally counseled about poor job performance rising to the level of needing improvement.  All that Dodson says (and not on the pages cited by counsel for plaintiff) is that she recalls Hughes talking to her about deficient performance in some areas.  (Dodson Dep. at 92-102.)  But Dodson does not recall whether those issues were discussed *prior* to her promotion to the Pelham position.  (Dodson Dep. at 92-102.)  In fact, there is nothing in the record to suggest that Hughes discussed deficient performance with Dodson prior to the time she was selected for the store manager position.[33]  (Hughes Dep. at 76-79.)  But there is undisputed evidence that Thomas was rated as "needs improvement" in

---

[33] <u>See</u> Plaintiff's Evidentiary Submission in Opp'n. to Def.'s Mot. for Summ. J., Exh. 12 (Dodson was rated as "meets expectations" on her 2005 performance rating).

March 2005, just five months before this Pelham position became available.  It is not for the court to second-guess the employer's wisdom in deciding to promote a candidate *without* a "needs improvement" rating (verbal or written) over one who had received such a rating.  See Alexander, 207 F.3d at 1341.  Therefore, pretext argument 3 fails.

The training issue advanced in pretext argument 4, the EEOC statement issue advanced in pretext argument 5, and the complaint issue advanced in pretext argument 6, all which contain no argument unique to the position awarded to Dodson, fail for the same reasons they did in Section IV.A.1.i., supra.

There is no argument or combination of arguments contained in the laundry list of plaintiff's attempts to show pretext that comes close to establishing that the contested promotion decision was motivated by race.[34]  See Alexander, 207 F.3d at 1339.  Therefore, defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the August 28, 2005 Pelham position, is due to be granted.

### vii.    The August 28, 2005 Tuscaloosa/Lomb Position

Thomas has abandoned his claim as related to this position, stating that he "does not dispute that Rogers would have been more qualified for the position."

---

[34] See footnote 23, supra.

49

(Doc. # 25 at 16.)   Therefore, he has failed to establish a prima facie case of discrimination, see Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005) and Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004), and summary judgment is due to be granted on the race discrimination claim related to this position.

### viii.   The August 22, 2005 Selma Position

Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Ray Miller for the Selma position: Miller was a proven skilled store manager who lived right outside of Prattville, in close proximity to the Selma store.  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

Counsel for plaintiff has the following theories on pretext: (1) Thomas's supervisor, Robert Evans, had recommended Thomas for a store manager position of

a larger volume store[35] (see doc. # 25 at 19-20); (2) the "needs improvement" rating that Thomas received on his performance evaluation was "bogus" and not the real reason he was denied the position (see doc. # 25 at 20); (3) Thomas was told by Hughes that he was required to complete training prior to being promoted, but there were white employees that Hughes promoted who did not complete the three phases of training; (4) CVS was inconsistent in its position statement to the EEOC (see doc. # 25 at 24-26); and (5) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26).  As has been done with several earlier pretext arguments, it is worth noting that plaintiff himself has nothing to add on the subject of pretext, admitting that he does not know Ray Miller nor anything about Ray Miller.  (Thomas Dep. at 127-28.)

   None of the pretext arguments advanced by plaintiff in support of his position that the August 22, 2005 Selma promotion was awarded discriminatorily are unique. As such, they all fail for the same reasons as they did in Section IV.A.1.i., supra. Defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the August 22, 2005 Selma position, is due to be granted.

---

[35] See footnote 17, supra.

### ix.     The December 25, 2005 Columbiana Position

Consistent with its burden of production under <u>McDonnell Douglas</u>, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Lonnie Love for the Columbiana position: Love had more than fifteen years of management experience, had set himself apart during the interview process, and had demonstrated good leadership and merchandising skills.  (Hughes Aff. ¶ 18; Hughes Dep. at 183, 187-88.)  <u>See</u> <u>Chapman</u>, 229 F.3d at 1033-35; <u>see also</u> <u>Denney</u>, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  <u>See</u> <u>Chapman</u>, 229 F.3d at 1028; <u>see also</u> <u>Grigsby</u>, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination.)

Counsel for plaintiff has the following theories on pretext: (1) Hughes interviewed Thomas for the position only after Thomas filed his initial charge of discrimination with the EEOC and his attitude and questioning of Thomas during the interview was adverse (<u>see</u> doc. # 25 at 18) – just two months after he was promoted to the Columbiana position, Love was demoted to shift supervisor (<u>see</u> doc. # 25 at 18); (2) Thomas's supervisor, Robert Evans, had recommended Thomas for a store

manager position of a larger volume store[36] (see doc. # 25 at 19-20); (3) the "needs improvement" performance evaluation that plaintiff received was "bogus" and not the real reason Thomas was not awarded the promotion (see doc. # 25 at 20-23, 24); (4) at the time he was promoted, Love had not completed all three phases of the management training  program; in contrast, Thomas was told by Hughes that he was required to complete training prior to being promoted (see doc. # 25 at 17, 24, 30); (5) CVS was inconsistent in its position statement to the EEOC (see doc. # 25 at 24-26); and (6) Thomas complained to store manager Perkins about not being promoted by Hughes in favor of white employees; Thomas also complained to store manager Long that Hughes did not like people of color and would not promote him (see doc. # 25 at 26).  Plaintiff himself does not testify as to why he believes he was the superior candidate for the Columbiana position.

Pretext argument 1 attempts to show bias on the part of Hughes by emphasizing that an interview "adverse" to Thomas was conducted only after Thomas had filed a charge of discrimination with the EEOC.[37]   But that argument is premised on

---

[36] See footnote 17, supra.

[37] Pretext argument 1 also contains a reference to Love's "demotion" two months after being promoted to the store manager position at issue here.  Of course, an event occurring *after* the promotion decision was made cannot be evidence of pretext.  And even had CVS made the wrong decision in promoting Love to the position, that by itself does not expose CVS to liability. See Walker, 158 F.3d at 1190, *cert. denied*, 528 U.S. 809 (1999).

Thomas's sham affidavit, and therefore must be stricken from consideration. In his deposition given on April 10, 2007, Thomas testified that he did not recall specific questions asked during the course of the interview, or any detail "except for the fact that I said I felt I could run a store. But as far as other details, I cannot recall clearly." (Thomas Dep. at 84-87.) In contrast, in his affidavit, signed on December 21, 2007, Thomas recalls the interview in great "adverse" detail:

> During this interview, Hughes was very adverse to me and the interview process was a joke. Hughes told me he was interviewing me, but not giving me the job, and that he had other people he was going to talk to. It was clear from the start of the interview due to Hughes' attitude and he questioned me that I was not going to get the job, even though I tried hard to sell myself during the interview process.

(Thomas Aff. at ¶ 24.) This is a direct contradiction and under the law of this Circuit shall be disregarded. See McCormick, 333 F.3d at 1240 n. 7; see also Van T. Junkins, 736 F.2d at 657.[38]

Pretext arguments 2 through 6 offer no unique discussion on the position awarded to Love, and therefore they fail for the same reasons they did in Section IV.A.1.i., supra. Defendant's motion (doc. # 12) for summary judgment, as it relates to the race claim associated with the December 25, 2005 Columbiana position, is due to be granted.

---

[38] Therefore, Defendant's Motion (doc. # 26) to Strike, as outlined on pages 5-6, is **GRANTED**.

2.      **Retaliation on the Basis of Race**

Count One of the Complaint alleges that CVS retaliated against Thomas on the basis of his race in violation of 42 U.S.C. § 1981.  Title VII clearly prohibits an employer from discriminating against any individual for participation in or opposition to unlawful employment practices.  See 42 U.S.C. § 2000e-3(a).  Since May 27, 2008 it has been equally as clear that 41 U.S.C. § 1981 encompasses retaliation claims.  CBOCS West, Inc. v. Humphries, 128 S.Ct. 1951 (2008).

To establish a prima facie case of retaliation, Thomas must show: (1) that he engaged in protected activity or expression; (2) that he suffered an adverse employment action; and (3) that the adverse employment action was causally connected to the protected conduct.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998); see also Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989).  If Thomas is able to meet that initial burden, the task shifts to CVS to articulate legitimate, non-discriminatory reasons for the alleged retaliatory acts.  See Phillips v. Aaron Rents, Inc., Slip Copy, 2008 WL 111038, No. 07-11477 at *8 (11th Cir. Jan. 11, 2008) ("Retaliation claims are also analyzed under the McDonnell Douglas burden-shifting framework.") (citing Holifield, 115 F.3d at 1566).  Upon articulation, Thomas must demonstrate that CVS's proffered explanation is a pretext for retaliation in order for her claim to

survive summary judgment.  See id.

Plaintiff's Response (doc. # 25) in Opposition to Defendant's Motion for Summary Judgment spends much time explaining the impact of *Burlington N. & Santa Fe Ry. Co. v. White* on the scope of retaliation claims and correctly argues that positions awarded[39] after CVS became aware of protected activity *could* support a retaliation claim.  (See Doc. # 25 at 38-44.)  Thomas filed his initial charge of discrimination, No. 130-2005-06556, with the EEOC on September 6, 2005. Therefore, any adverse action taken by CVS against Thomas after September 6, 2005 could possibly support a claim for retaliation.[40]  And the only contested decision that fits that bill is the Columbiana position awarded to Lonnie Love on December 25, 2005.[41]

---

[39] Plaintiff makes no argument that any other acts of CVS were retaliatory.  (See Doc. # 25 at 42-44.)

[40] Defendant states that it received notice of the original charge of discrimination filed by Thomas on or about September 13, 2005 and therefore all of the challenged promotion decisions that occurred prior to that date cannot form the basis of plaintiff's retaliation claim.  (See Doc. # 13 at 47.)  But CVS has produced no document to establish notice only as of the September 13 date.  Therefore, in an abundance of caution, the court will consider all promotion decisions made after September 6 as possibly supporting the claim for retaliation.

[41] Plaintiff states that a position awarded to Paul Mims also fits within the time frame to be considered by the court as retaliatory.  (See Doc. # 25 at 42.)  But Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment does not outline *when* Mims was promoted or outline any other information pertinent to an inquiry on a retaliation claim.  (See Doc. # 25 at 19.)  In fact, while Mims is discussed at length in deposition testimony in connection with the Columbiana position ultimately awarded to Love, (see docs. # 22-24 at exh. 7; see also Hughes dep. at 180-201), Mims' promotion to store manager sometime thereafter is

56

Thomas has not established a prima facie case of retaliation for the December 25, 2005 Columbiana position.  There is no evidence that the December 25, 2005 promotion decision bears any causal connection to the charge of discrimination filed with the EEOC.  A *more than three month* delay, without any other evidence of discriminatory intent,[42] cannot support a claim of retaliation.  See Thomas v. Cooper Lighting, Inc., 506 F.3d 1361 (11th Cir. 2007) ("In opposing summary judgment, [plaintiff] failed to present evidence from which a reasonable jury could find any causal connection between her . . . complaints of sexual harassment and the termination of her employment three (3) months later."); see also Higdon v. Jackson, 393 F.2d 1211, 1220 (11th Cir. 2004) (noting that the Supreme Court cited with approval cases stating that a 3 to 4 month disparity between the activity and the adverse action was insufficient to find a causal connection).

Because Thomas has failed to establish a causal connection between his protected activity and the allegedly adverse action of CVS, his claim of retaliation necessarily fails.

_____

not discussed at length anywhere in the parties' briefs.  (See Doc. # 13 at 19, 42-44; see also generally Doc. # 25.)  But what is clear is that by the time Mims was promoted to a store manager position, Thomas had also been promoted to store manager.  (See Hughes Dep. at 205-208.)  Therefore, only the position awarded to Love will be considered by the court in the retaliation context.

[42] See generally Section IV.A.1.ix. above.

57

**B.     Alabama Age Discrimination, Harassment, and Retaliation (Count Two)**

At the outset, the court notes that the parties agree that the standard to be used in evaluating plaintiff's claims under the AADEA is the same as that used to evaluate claims under the federal age discrimination statute.  (See Doc. # 25 at 31, n.3.)  And for suits under the federal age discrimination statute, the Eleventh Circuit Court of Appeals has adopted the principles that govern the order and allocation of proof in cases under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.A. §§ 1981a, 2000e through 2000e-17.  See Chapman, 229 F.3d at 1024.  The court will use those precedents in the evaluation of plaintiff's claims.

**1.     The Individual Failure to Promote Claims**

**a.     Timeliness of Claims Prior to June 9, 2005**

Under the AADEA, an employee satisfies the limitations period by filing a lawsuit within 180 days of the alleged unlawful practice or by filing a charge of discrimination with the EEOC within 180 days of the alleged unlawful practice.  See Jones v. Dillard's Inc., 368 F.3d 1278, 1279 (11th Cir. 2004) (quoting Ala. Code 1975, § 25-1-29).  Thomas filed his original charge of discrimination, No. 130-2005-06556, with the EEOC on September 6, 2005.  (Def.'s Exhs. 4, 5 to Thomas Dep.) That charge and related questionnaire clearly allege only racial discrimination.  Age

is not checked on the charge and Thomas's questionnaire expounds only that "many others have been promoted with less time than me [seniority] and not any of them look like me." (Def.'s Exhs. 4, 5 to Thomas Dep.)  As such, the EEOC investigation related to the original charge could not reasonably be expected to encompass a claim for age discrimination.  See Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994) (finding that the plaintiff's judicial complaint is limited to the scope of the EEOC investigation); see also Gaston v. Home Depot USA, 129 F.Supp. 2d 1355, 1366 (S.D. Fla. 2001) (finding it "quite clear that [plaintiff's discrimination and retaliation] claim was based on race, and it is not reasonable to expect that a subsequent EEOC investigation would also embrace national origin.") But on December 6, 2005, Thomas filed an amended charge of discrimination with the EEOC, No. 130-2005-06556.  (Def.'s Exh. 6 to Thomas Dep.)  The amended charge checked both race and age as categories of discrimination, and generally alleged that "[y]ounger white employees have been treated more favorably and give[n] more opportunities than older black workers."  (Def.'s Exh. 6 to Thomas Dep.)

Any promotion decisions can properly be challenged for illegal age discrimination if those decisions occurred no more than 180 days prior to the filing of the amended charge – June 9, 2005.  See Jones v. Dillard's Inc., 368 F.3d 1278, 1279 (11th Cir. 2004) (quoting Ala. Code 1975, § 25-1-29).  Decisions made prior

59

to June 9, 2005 cannot properly be challenged by Thomas on the basis of age because the amended charge, which asserted a new theory of recovery, does not relate back to the original charge.  See Mathis v. Leggett & Platt, Slip Copy, 2008 WL 124512, No. 07-11454 (11th Cir. Jan. 15, 2008) (citing Manning v. Chevron Chem. Co., 332 F.3d 874, 878 (5th Cir. 2003) ("Generally, amendments that raise a new legal theory do not 'relate back' to the original charge of discrimination.")); see also Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109-110, 114 (2002) (2002) (finding that a discrete retaliatory or discriminatory act "occurred" on the day that it "happened" and "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify.  Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'") and Stuart v. Jefferson County Dep't of Human Resources, 152 Fed. Appx. 798, 800-01 (11th Cir. 2005) ("We reject [plaintiff's] contention that his claims are continuing violations.  An employer's failure to promote is a discrete act or single occurrence and therefore the continuing violation doctrine does not apply").

Therefore, defendant's motion (doc. # 12) for summary judgment, as it relates to the promotions of Justin Carr, Bennie McGraw, Heath McAlister, and Kimberly Clay, which plaintiff contends were awarded discriminatorily on the basis of age, is

due to be granted.

### b.    Merits of the Individual AADEA Claims[43]

Plaintiff alleges that he was discriminatorily denied ten separate promotions because of his age in violation of the AADEA:[44] (1) the January 23, 2005 Five Points West position to which Justin Carr was promoted; (2) the May 1, 2005 Tuscaloosa/Lomb position to which Charles Bennie McGraw was promoted; (3) the June 5, 2005 Pelham position to which Heath McAlister was promoted; (4) the June 5, 2005 Bluff Park position to which Kimberly Clay was promoted; (5) the June 12, 2005 Tuscaloosa/Lomb position to which Jonathan Hollabaugh was promoted; (6) the August 28, 2005 Pelham position to which Amanda Chhetri Dodson was promoted; (7) the August 28, 2005 Tuscaloosa/Lomb position to which Jimmy Rogers was promoted; (8) the August 22, 2005 Selma position to which Ray Miller was promoted; and (9) the December 25, 2005 Columbiana position to which Lonnie Love was promoted.  (See Doc. # 25 at 9-19; see also generally Compl.)

To establish age discrimination in a failure to promote case using circumstantial evidence,[45] the plaintiff must show: (1) that he belongs to a protected

---

[43] In the interest of thoroughness, the court will consider the merits of *all* of the contested promotion decisions, even those that are time-barred.

[44] See footnote 15, supra.

[45] Plaintiff admits that this is a circumstantial evidence case.  (See Doc. # 25 at 27-35.)

61

class; (2) that he applied for and was qualified for the position for which the employer was seeking applicants; (3) that he was denied the promotion; and (4) that another equally or less qualified individual outside of the protected class received the promotion or that the position remained open.  See Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005); see also Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004).  After the plaintiff has produced evidence sufficient to establish the prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the failure to promote.  See Vessels, 408 F.3d at 767; see also Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642-43 (11th Cir. 1998). Upon articulation, the burden shifts back to the plaintiff to prove that the articulated reason acted as a pretext for discrimination.  See id. at 643; see also McDonnell Douglas v. Green, 411 U.S. 792, 802-03 (1973).  One method of proving pretext is showing that the employer's proffered explanation is unworthy of credence.  St. Mary's Honor Center v. Hicks, 509 U.S. 502, 517 (1993).  It is upon this method of proving pretext that plaintiff relies.  (See Doc. # 25 at 32-35.) However, where qualification is at issue, "a plaintiff cannot prove pretext by simply arguing or even by showing that he was better qualified than the [individual] who received the position he coveted.  A plaintiff must show not merely that the defendant's employment decisions were mistaken but that they were in fact motivated

62

by [age].  We have explained, a plaintiff may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer."  Alexander v. Fulton County, 207 F.3d 1303, 1339 (11th Cir. 2000) (internal quotations omitted).

### i.        The January 23, 2005 Five Points Position

Even assuming that the claim regarding this position had been timely filed and that Thomas had established his prima facie case of age discrimination, summary judgment would nevertheless be due to be granted.  Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Justin Carr for the Five Points position: Carr had performed well as an Assistant Store Manager, had previous management experience before his employment with CVS, was highly recommended for the promotion by a top Store Manager, and had great communication, merchandising, and leadership skills.  (Hughes Aff. ¶ 10.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that

63

plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

However, plaintiff's arguments on pretext,[46] which are fewer in number yet where made mirror the arguments made in the context of the race discrimination claim,[47] fail for the same reasons they did in Section IV.A.1.i., <u>supra</u>.. Thus, even had this claim been timely filed, plaintiff would nevertheless fail to survive summary judgment. He has failed to come forward with evidence sufficient to permit a fact-finder to find that at least one of the reasons articulated by CVS for making the promotion decision were pretextual. Defendant's motion (doc. # 12)for summary judgment, as it relates to plaintiff's claim that he was discriminatorily denied the position awarded to Justin Carr because of his age, is due to be granted.

### ii.     The May 1, 2005 Tuscaloosa/Lomb Position

Even assuming that the claim regarding this position had been timely filed and that Thomas had established his prima facie case, summary judgment would

---

[46] The court is providing plaintiff with a generous benefit of the doubt by attributing all of the pertinent race discrimination arguments to the age discrimination pretext analysis. Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment does not clearly outline the pretext arguments in support of plaintiff's age discrimination claims. (<u>See</u> Doc. # 25 at 31-35.)

[47] Counsel for plaintiff notes with particularity that Carr was 27 years old when hired by CVS. (<u>See</u> Doc. # 25 at 9.) Although that fact is relevant to the prima facie analysis, it is utterly unhelpful in the pretext analysis.

nevertheless be due to be granted.  Consistent with its burden of production under

McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to

support its decision to select Charles Bennie McGraw for the Tuscaloosa/Lomb

position: McGraw had demonstrated his willingness to transfer, his communication

and merchandising skills, as well as his ambition. (Hughes Aff. ¶ 11.)  See Chapman,

229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of

discrimination is eliminated, thereby shifting the burden to Thomas to come forward

with sufficient evidence to permit a reasonable fact-finder to find that the articulated

reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d

at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail

through significantly probative evidence that the proffered reasons are a pretext for

discrimination).

However, plaintiff's arguments on pretext,[48] which are fewer in number yet

where made mirror the arguments made in the context of the race discrimination

claim, fail for the same reasons they did in Section IV.A.1.ii., supra.  Thus, even had

this claim been timely filed, plaintiff would nevertheless fail to survive summary

judgment.  He has failed to come forward with sufficient evidence to permit a fact-

finder to find that at least one of the reasons articulated by CVS for making the

_____

[48] See footnote 46, supra.

promotion decision were pretextual.  Defendant's motion (doc. # 12) for summary judgment, as it relates to plaintiff's claim that he was subjected to age discrimination when denied the position awarded to Bennie McGraw, is due to be granted.

### iii.    The June 5, 2005 Pelham Position

Even assuming that the claim regarding this position had been timely filed and that Thomas had established his prima facie case, summary judgment would nevertheless be due to be granted.  Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to supports its decision to select Heath McAlister for the Pelham position: McAlister had background experience in management, great communication skills, and had demonstrated initiative and ambition.  (Hughes Aff. ¶ 12.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  In contrast, the skills that Hughes saw in McAlister were not skills that he saw in Thomas.  (Hughes Aff. ¶ 12.)  On his most recent performance evaluation, Thomas had been rated as "needs improvement" and was not recommended by his manager to be promoted to Store Manager.  (Hughes Aff. ¶ 12; Hughes Dep. at 102.)  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594

(holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

However, plaintiff's arguments on pretext,[49] which are fewer in number yet where made mirror the arguments made in the context of the race discrimination claim, fail for the same reasons they did in Section IV.A.1.iii., supra. Thus, even had this claim been timely filed, plaintiff would nevertheless fail to survive summary judgment. He has failed to come forward with sufficient evidence to permit a fact-finder to find that at least one of the reasons articulated by CVS for making the promotion decision were pretextual. Defendant's motion (doc. # 12) for summary judgment, as it relates to plaintiff's claim that he was subjected to age discrimination when denied the position awarded to Heath McAlister, is due to be granted.

### iv.    The June 5, 2005 Bluff Park Position

Even assuming that the claim regarding this position had been timely filed and that Thomas had established his prima facie case, summary judgment would nevertheless be due to be granted. Consistent with its burden of production under McDonnell Douglas, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Kimberly Clay for the Bluff Park position: Clay had

---

[49] See footnote 46, supra.

67

demonstrated her merchandising, leadership, and communication skills, and both store managers that she had worked under said that she was ready to run a store. (Hughes Aff. ¶ 13.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186. In contrast, Hughes believed that Thomas's communication skills were holding him back and would inhibit his ability to build a team.  (Hughes Aff. ¶ 13; Hughes Dep. at 123.)  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

However, plaintiff's arguments on pretext,[50] which are fewer in number yet where made mirror the arguments made in the context of the race discrimination claim, fail for the same reasons they did in Section IV.A.1.iv., supra.  Thus, even had this claim been timely filed, plaintiff would nevertheless fail to survive summary judgment.  He has failed to come forward with sufficient evidence to permit a fact-finder to find that at least one of the reasons articulated by CVS for making the promotion decision were pretextual.  Defendant's motion (doc. # 12) for summary

---

[50] See footnote 46, supra.

judgment, as it relates to plaintiff's claim that he was subjected to age discrimination when denied the position awarded to Kimberly Clay, is due to be granted.

### v.    The June 12, 2005 Tuscaloosa/Lomb Position

For the purpose of summary judgment, the court will assume that Thomas has established a prima facie case with respect to this position filled by Jonathan Hollabaugh.  In response, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Jonathan Hollabaugh for the Tuscaloosa/Lomb position: Hollabaugh had demonstrated his ambition, initiative, communication, and merchandising skills, and had prior management experience at another company. (Hughes Aff. ¶ 14.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

However, plaintiff's arguments on pretext,[51] which are fewer in number yet where made mirror the arguments made in the context of the race discrimination

---

[51] See footnote 46, supra.

claim, fail for the same reasons they did in Section IV.A.1.v., supra.  Thus, plaintiff has failed to come forward with sufficient evidence to permit a fact-finder to find that at least one of the reasons articulated by CVS for making the promotion decision were pretextual.  Defendant's motion (doc. # 12) for summary judgment as to plaintiff's claim that he was subjected to age discrimination when denied the position awarded to Jonathan Hollabaugh is due to be granted.

### vi.    The August 28, 2005 Pelham Position

For the purpose of summary judgment, the court will assume that Thomas has established a prima facie case with respect to this position filled by Amanda Chhetri Dodson.  In response, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Dodson for the Pelham position: Dodson was a proven employee, a good shift supervisor who effectively performed the functions of an assistant store manager, a good merchandiser, and was highly recommended by her store manager for the promotion.  (Hughes Aff. ¶ 15; Hughes Dep. at 139.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he

70

can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

However, plaintiff's arguments on pretext,[52] which are fewer in number yet where made mirror the arguments made in the context of the race discrimination claim, fail for the same reasons they did in Section IV.A.1.vi., supra.  Thus, plaintiff has failed to come forward with sufficient evidence to permit a fact-finder to find that at least one of the reasons articulated by CVS for making the promotion decision were pretextual.  Defendant's motion (doc. # 12) for summary judgment as to plaintiff's claim that he was subjected to age discrimination when denied the position awarded to Kimberly Clay is due to be granted.

### vii.    The August 28, 2005 Tuscaloosa/Lomb Position

Thomas has abandoned his claim as related to this position, stating that he "does not dispute that Rogers would have been more qualified for the position." (Doc. # 25 at 16.)   Therefore, he has failed to establish a prima facie case of discrimination, see Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 768 (11th Cir. 2005) and Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1089 (11th Cir. 2004), and summary judgment is due to be granted on the age discrimination claim related to this position.

---

[52] See footnote 46, supra.

### viii.   The August 22, 2005 Selma Position

For the purpose of summary judgment, the court will assume that Thomas has established a prima facie case with respect to this position filled by Ray Miller.  In response, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Miller for the Selma position: Miller was a proven former store manager who lived right outside of Prattville, in close proximity to the Selma store. (Hughes Aff. ¶ 17; Hughes Dep. at 214-15.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

However, plaintiff's arguments on pretext,[53] which are fewer in number yet where made mirror the arguments made in the context of the race discrimination claim, fail for the same reasons they did in Section IV.A.1.viii., supra.  Thus, plaintiff has failed to come forward with sufficient evidence to permit a fact-finder to find that

---

[53] See footnote 46, supra.

at least one of the reasons articulated by CVS for making the promotion decision were pretextual.   Defendant's motion (doc. # 12) for summary judgment as to plaintiff's claim that he was subjected to age discrimination when denied the position awarded to Ray Miller is due to be granted.

### ix.   The December 25, 2005 Columbiana Position

For the purpose of summary judgment, the court will assume that Thomas has established a prima facie case with respect to this position filled by Lonnie Love.  In response, CVS articulates legitimate, non-discriminatory reasons to support its decision to select Love for the Columbiana position: Love had more than fifteen years of management experience, had set himself apart during the interview process, and had demonstrated good leadership and merchandising skills.  (Hughes Aff. ¶ 18; Hughes Dep. at 183, 187-88.)  See Chapman, 229 F.3d at 1033-35; see also Denney, 247 F.3d at 1186.  Thus, the presumption of discrimination is eliminated, thereby shifting the burden to Thomas to come forward with sufficient evidence to permit a reasonable fact-finder to find that the articulated reasons are pretextual.  See Chapman, 229 F.3d at 1028; see also Grigsby, 821 F.2d at 594 (holding that plaintiff's burden at this stage is exacting; he can only prevail through significantly probative evidence that the proffered reasons are a pretext for discrimination).

However, plaintiff's arguments on pretext,[54] which are fewer in number yet where made mirror the arguments made in the context of the race discrimination claim, fail for the same reasons they did in Section IV.A.1.ix., <u>supra</u>.  Thus, plaintiff has failed to come forward with sufficient evidence to permit a fact-finder to find that at least one of the reasons articulated by CVS for making the promotion decision were pretextual.   Defendant's motion (doc. # 12) for summary judgment as to plaintiff's claim that he was subjected to age discrimination when denied the position awarded to Lonnie Love is due to be granted.

## 2.    Hostile Work Environment under the AADEA

Plaintiff's complaint alleges that CVS subjected him to harassment under the AADEA. (<u>See</u> Compl. Count Three.)  The Eleventh Circuit has not explicitly decided whether claims of a hostile work environment based on age discrimination are actionable under the ADEA (and henceforth the AADEA), but there has been some implicit recognition of the viability of such a claim as analyzed under the Title VII framework of analysis.  <u>See</u> <u>Hipp v. Liberty Nat'l Life Ins. Co.</u>, 252 F.3d 1208, 1244-45 n. 80 (11th Cir. 2001) (holding that plaintiffs did not satisfy the requirements of a hostile work environment "[a]ssuming hostile work environment claims are cognizable under the ADEA.").  Therefore, for purposes of summary judgment, the

---

[54] <u>See</u> footnote 46, <u>supra</u>.

court will assume that hostile work environment claims are actionable under the AADEA.

A hostile work environment claim is established upon proof that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21, 114 S. Ct. 367, 370 (1993). The Eleventh Circuit has repeatedly instructed that a plaintiff wishing to establish a hostile work environment claim must show: (1) that he belongs to a protected group; (2) that he has been subjected to unwelcome harassment; (3) that the harassment was based on a protected characteristic of the employee, such as age; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability. Mendoza v. Borden , 195 F.3d 1238, 1245 (11th Cir. 1998). CVS argues that Thomas cannot meet his prima facie case. (See Doc. # 13 at 25-28.) The court agrees with CVS.

To determine whether harassment was severe and pervasive to alter Thomas's terms and conditions of employment, the court considers the following four factors: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the

conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." <u>Allen v. Tyson Foods</u>, 121 F.3d 642, 647 (11th Cir. 1997) (citing and applying <u>Harris</u>, 510 U.S. at 23). In addition, the employee must meet both a subjective and objective test. <u>See Mendoza</u>, 195 F.3d at 1246. Thomas must establish not only that she subjectively perceived the environment as hostile, but also that a reasonable person would perceive the environment to be hostile and abusive. <u>Watkins v. Bowden</u>, 105 F.3d 1344, 1355-56 (11th Cir. 1997). The objective severity of harassment should be judged from the perspective of a reasonable person in the employee's position, considering all the circumstances. <u>Id.</u>

The allegations to support the hostile work environment claim are elusive at best. In his brief, Thomas baldly states that he can prove a prima facie case of AADEA harassment, but fails to back that statement with any facts, legal argument, or citation to case law. (<u>See</u> Doc. # 25 at 31-32.) And his deposition testimony similarly fails to set forth any set of facts that could even begin to marginally make out a claim for hostile work environment age discrimination. Thomas admits that he never heard Hughes say anything that would indicate he preferred younger employees

or that would indicate that Hughes had a problem with older employees.[55]  (Thomas

Dep. at 95-96.)  He advances no argument that any actions taken by CVS, other than

the promotion decisions outlined above, were motivated by age.  Therefore, there is

no set of facts to support a conclusion that the workplace was permeated with

discriminatory intimidation, ridicule, and insult and CVS is entitled to summary

judgment on the hostile work environment claim.[56]

### 3.    Retaliation under the AADEA

Count Two of the Complaint alleges that CVS subjected Thomas to retaliation

as prohibited by the AADEA.  Indeed the ADEA (and therefore the AADEA)

prohibits an employer from discriminating against any individual for participation in

or opposition to unlawful employment practices.  See 29 U.S.C. § 623(d).  To

establish a prima facie case of retaliation, Thomas must show: (1) that he engaged in

---

[55] Thomas says that he heard other employees say that Hughes preferred younger managers, but Thomas cannot recall who made those comments, it was just "people talking." (Thomas Dep. at 96-97.)  This clearly does not establish that Hughes had an animus against older workers or that he subjected anyone to a hostile work environment on the basis of age.

[56] In addition, defendant is entitled to summary judgment on plaintiff's harassment claim under the Faragher/Ellerth defense.  (See Doc. # 13 at 28-31.)  Plaintiff's brief did not respond at all to defendant's argument regarding this defense.  Moreover, plaintiff admitted in his deposition that he was aware of CVS's widely disseminated policy against harassment that required employees to report offending conduct and set out procedures by which such report would be investigated and remedied.  Plaintiff also admitted that he never reported any of the alleged harassment by Hughes to CVS – all he contends is that he one time told his Store Manager that "it seemed like it was taking a long time [to be promoted]."  (Thomas Dep. at 130.)  As such, CVS is entitled to the Faragher/Ellerth affirmative defense and cannot be held liable on Thomas's claim of age harassment under the AADEA.

protected activity or expression; (2) that he suffered an adverse employment action; and (3) that the adverse employment action was causally connected to the protected conduct.  See Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998); see also Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1494 (11th Cir. 1989).  If Thomas is able to advance a prima facie case of retaliation, the burden then shifts in accordance with McDonnell Douglas to CVS to articulate legitimate, non-discriminatory reasons for the alleged retaliatory acts.  See Phillips v. Aaron Rents, Inc., Slip Copy, 2008 WL 111038, No. 07-11477 at *8 (11th Cir. Jan. 11, 2008) ("Retaliation claims are also analyzed under the McDonnell Douglas burden-shifting framework.") (citing Holifield, 115 F.3d at 1566).  Upon articulation, Thomas must demonstrate that CVS's proffered explanation is a pretext for retaliation in order for her claim to survive summary judgment.  See id.

Thomas did not engage in statutorily protected expression when he complained to his store manager that it was taking longer than expected to get promoted.  See Rollins v. State of Fla. Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir. 1989) (To recover for retaliation, a plaintiff need not show that he made a formal complaint of discrimination but must have at least made informal complaints of *unlawful* discrimination.)  He did, however, clearly engage in statutorily protected expression when he filed a charge of discrimination with the EEOC alleging age

78

discrimination on December 6, 2005.  (See Def.'s Exhs. 4-6 to Thomas Dep.; see also Section IV.B.1.a. discussion, supra.)

But there is no causal connection between Thomas's December 2005 charge of discrimination and the promotion decisions which are at issue in this case.  CVS became aware of that protected expression on or about January 10, 2006, (see def.'s exh. 11 to Thomas dep.), well after the decisions to promote individuals over Thomas were made.  (See generally Section III.C., supra.)  "In order to establish the requisite 'causal link' required as part of a *prima facie* case, a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.'" Goldsmith v. City of Atmore, 996 F.2d 1155, 1163 (11th Cir. 1993); see also Brungart v. BellSouth Telecomms., Inc., 231 F.3d 791, 799 (11th Cir. 2000).  Of course, an adverse decision that is made *before* the protected activity cannot logically be related to the protected activity.  See Drago v. Jenne, 453 F.3d 1301, 1307 (11th Cir. 2006) ("[I]n a retaliation case, when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation.") (citing Cotton v. Cracker Barrel Old Country Store, Inc., 434 F.3d 1227, 1232 (11th Cir. 2006)).  Because Thomas advances no other facts to support his claim of retaliation under the AADEA (see doc. # 25 at 42-44), CVS's

79

motion for summary judgment as to this claim is due to be granted.

### C.    Negligent Hiring, Training, Supervision and Retention (Count Three)

Plaintiff has voluntarily dismissed his claim of negligent hiring, training, supervision, and retention and therefore summary judgment is due to be granted on that claim.  (See Doc. # 25 at 44.)

## VI.    Conclusion

In summary, the court finds that no material issues of fact remain and that defendant CVS/Pharmacy is entitled to judgment as a matter of law as to all claims asserted by plaintiff.[57]

A separate order will be entered.

**DONE** this the ___14th___ day of July, 2008.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

[57] Because this memorandum opinion disposes of all claims in this case, the motions (docs. # 34, 35) of defendant CVS to strike plaintiff's witness and exhibit lists are **MOOT**.  To the extent that certain portions of defendant's motion (doc. # 26) to strike have not been specifically considered herein, those portions are **MOOT** because the testimony contested therein was not relied upon by the court in reaching the final disposition of the case.